UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

– against –

CURT MATTHEWS, et al.,

        Defendants.

--------------------------------------------------------X

**ORDER**

03 CR 1214 (ERK) (MDG)

        By letter dated June 30, 2005, counsel for Defendant Curt Matthews ("Matthews") requested that this Court: (1) issue a so-ordered subpoena compelling the Atlanta Georgia Pre-Trial Detention Center (the "Detention Center") to produce all inmate movement logs and or records of January 31, 2004 (the "subpoena"); and (2) approve his request to hire a handwriting expert ("Def.'s 6/30/05 Ltr."). Noting the absence of any opposition from the government, this Court so-ordered the subpoena on July 12, 1005.[1]

        By letter dated July 13, 2005, the government moves pursuant to Fed. R. Crim. P. 17(c)(2) to quash the subpoena, and opposes Matthews's request to hire a handwriting expert ("Govt. 7/13/05 Ltr."). On July 21, 2005, Matthews's counsel responded to the government's letter ("Def.'s 7/21/05 Ltr."). Thereafter, on July 27, 2005, the City of Atlanta Department of Law ("City of Atlanta"), counsel for the Detention Center, submitted a letter joining the government's motion to quash the subpoena ("Detention Center 7/27/05 Ltr."). On the same day, Matthews's counsel responded to the City of Atlanta's letter ("Def.'s 7/27/05 Ltr.").

---

[1] As acknowledged by the government in its letter dated July 13, 2005, the government indicated that it would submit a response to defense counsel's letter by July 8, 2005, but did not do so.

BACKGROUND

Pursuant to a warrant for Matthews's arrest, issued by this Court, Georgia federal and state law enforcement officers arrested Matthews in Stone Mountain, Georgia on January 30, 2004. Later that day, Matthews was taken to the Detention Center.

By Notice of Motion dated May 6, 2004, Matthews moved <u>inter</u> <u>alia</u>, for an order suppressing his post-arrest statements made the following day, Saturday, January 31, 2004. Chief District Judge Korman referred this motion to Magistrate Judge A. Simon Chrein.

On December 3, 2004, Judge Chrein held a suppression hearing regarding Matthews's motion to suppress his post-arrest statements.[2] At the hearing, the government entered into evidence a copy of the Federal Bureau of Investigation's FD-395 advice of rights form, dated January 31, 2004, executed by Matthews, Special Agent Thomas MacDonald ("MacDonald"), Special Agent Brandon Waller ("Waller"), Special Agent Perry Meador, and Detective Michael Newman ("FD-395"). Tr. 30, Govt. Ex. 2. Judge Chrein reserved decision, but passed away before issuing a report and recommendation.

After, this case was reassigned to me on April 11, 2005. I reopened the hearing and continued it on June 8, 2005. During the hearing, Matthews's counsel requested that the government produce the original FD-395 for his inspection. Tr. 174, 264. This Court also inspected the original document.

---

[2] All references to the transcript of proceedings before Judge Chrein and the undersigned conducted on December 3, 2004 and June 8, 2005, are herein referred to as "Tr." The pages of the transcript of the hearing on June 8, 2005, begin on the page following the last page of the transcript on December 3, 2004.

## DISCUSSION

I.  Subpoena

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas in criminal proceedings. Rule 17(c) permits the court to issue a subpoena for documents before trial as follows:

> A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c). Unlike Rules 17(a) and 17(b), which are designed to secure the testimony of witnesses at a criminal proceeding, a subpoena duces tecum issued pursuant to Rule 17(c) permits the court to direct production of the requested items in court, before they are to be offered into evidence. See id.; see also United States v. Reyes, 162 F.R.D. 468 (S.D.N.Y. 1995).

However, Rule 17(c) "was not intended to provide a means of discovery for criminal cases." United States v. Nixon, 418 U.S. 683, 698 (1974); see also United States v. Ashley, 162 F.R.D. at 265, 266 (E.D.N.Y. 1995). Rather, "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951). Thus, "courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y. 1995).

In United States v. Nixon, the Supreme Court articulated a four part test that a party must satisfy in order to require the production of documents prior to trial. Under this test, the party must demonstrate:

3

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699-700. In short, the party seeking the subpoena "'must clear three hurdles: relevancy, admissibility, and specificity.'" United States v. Ashley, 162 F.R.D. at 266 (quoting United States v. Nixon, 418 U.S. at 700). The information sought must meet the tests of relevancy and admissibility at the time the subpoena is requested. United States v. Marchiso, 344 F.2d 653, 669 (2d Cir. 1965). Even if the requirements for a subpoena are met, "the court may quash or modify the subpoena if it would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

The government and the City of Atlanta contend that Matthews has failed to satisfy the requirements set forth in Nixon. First, they argue that the subpoena lacks specificity and seeks irrelevant information regarding individuals, other than Matthews, housed at the Detention Center. They also contend that compliance with the terms of the subpoena would be unduly burdensome for the Detention Center. Finally, they maintain that the information sought in the subpoena is duplicitous of a May 5, 2005 subpoena issued by District Judge Korman.[3]

Their arguments are not persuasive. As an initial matter, the Detention Center's records detailing Matthews's movement on January 31, 2004 have evidentiary value, since they may have bearing on when Matthews received warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). At the suppression hearing, Matthews's testimony regarding the timing of his

---

[3]This subpoena compelled the Detention Center to provide Matthews's detention and movement records from the time of his initial arrest and or detention, to arraignment. See Govt. 7/13/05 Ltr., Ex. A.

4

Miranda warnings was starkly different from that of Agent MacDonald and the other law enforcement officials. See Tr. 110, 145-146, 169-170, 196-199, 229, 232. Any information concerning Matthews's movement at the Detention Center on January 31, 2004, could corroborate either Matthews's or the government's account of events that occurred on this day. Moreover, in authorizing the May 5, 2005 subpoena, Judge Korman has previously found the information presently sought to be relevant.

While the subpoena in question does overlap with the May 5, 2005 subpoena issued by Judge Korman, the response to the earlier subpoena is incomplete. The Detention Center, by its own admission, apparently reviewed ledgers for only the 3NE pod, instead of ledgers and records for the entire facility.[4] Detention Center 7/27/05 Ltr.; see also Def.'s 6/30/05 Ltr., Exs. 1, 2; Def.'s 7/27/05 Ltr. While that pod is where federal detainees are ordinarily housed, the Detention Center stated that it has no records of where Matthews was kept, nor could it find the movement log for the 3NE pod for January 31, 2004. See Def.'s 6/30/05 Ltr., Exs. 1, 2.

Any concern over the burdensomeness of the subpoena and improvident disclosure of information relating to other inmates can be addressed by narrowing the scope of the subpoena and putting limits on use of information obtained. See Fed. R. Crim. P. 16(d); see also United States v. Fox, 276 F. Supp. 2d 996, 999 (D. Neb. 2003) (utilizing a protective order to seal documents produced pursuant to a Fed. R. Crim. P. 17(c) subpoena). The documents that are relevant to determining the issues presently before this Court are the Detention Center's

---

[4]In a letter dated June 8, 2005, to Matthews's counsel, Corrections Major Deborah V. McClendon of the Detention Center states:
> In compliance with your request, the Atlanta Department of Corrections, Records Section has made a good faith effort to produce the requested items. It was determined that no 3NE Pod Ledger for January 2004 was found.

Def.'s 6/30/05 Ltr. Ex. 2.

records and ledgers of January 31, 2004, from 12:00 p.m. to 4:00 p.m., pertaining to the movement of Matthews. Accordingly, the Court modifies the scope of the subpoena as follows: The Detention Center must produce all inmate logs and or records of January 31, 2004, for the time period of 12:00 p.m. to 4:00 p.m., pertaining solely to the movement of prisoners. The documents may be disclosed to counsel only. Counsel may use the documents only in connection with this proceeding and may not disclose the documents to anyone other than staff assisting in this matter, unless information concerning other inmates is redacted. The subpoena is returnable on August 9, 2005.

II.     Handwriting Expert

Matthews requests authority to hire a "handwriting expert" to analyze the time indicated on the FD-395, 2:30 p., written by Agent Waller. At the suppression hearing, Agent Waller testified that Matthews signed the FD-395 at 2:30 p.m. Tr. 171. Matthews contends that if there was another time under the 2:30 p., that was obliterated by Agent Waller, it would undermine the government's position that the law enforcement officials did not employ the "question first," warn later technique that was deemed unconstitutional in Missouri v. Seibert, 542 U.S. 600 (2004). The government argues that this request should be denied because it will not assist the Court in resolving the issue of whether Matthews knowingly and voluntarily waived his Miranda warnings.

As the law enforcement officials and Matthews provided conflicting testimony regarding Matthews's execution of the FD-395, the Court finds that the expert's opinion may have bearing on when the various signatures on the form may have been signed, or, at the very least, whether any of the signatories used the same pen to write over the time. See Tr. 110, 145-146, 169-170, 196-199, 229, 232; see also United States v. Dimaggio, No. 90 CR 125, 1991 U.S. Dist. LEXIS

7867 (N.D.N.Y. June 5, 1991).

## CONCLUSION

The government's motion to quash the subpoena is denied, but the subpoena is modified and disclosure of the produced information limited, as set forth above. The defendant's motion for a "handwriting expert" is granted.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 1, 2005

                                                  /s/
                                              Marilyn D. Go
                                              United States Magistrate Judge